UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Sue B. Daniels and Lamar Daniels, ) | Civil Action No.: 5:16-cv-00936-RBH |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Food Lion, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on Plaintiffs' second motion to amend the amended complaint and Defendant's motion for summary judgment. *See* ECF Nos. 43 & 46. For the reasons set forth below, the Court denies Plaintiffs' second motion to amend and grants Defendant's motion for summary judgment.

**Background**

This premises liability case arises out of an alleged slip and fall suffered by Plaintiff Sue B. Daniels ("Daniels") on or about March 2, 2015, while shopping at a retail store owned by Defendant, Food Lion, LLC ("Food Lion"), in Santee, South Carolina. Am. Compl. at ¶¶ 5–6 [ECF No. 1-2]. While checking out, Daniels alleges she slipped on a substance on the floor as she reached to push her shopping cart through the checkout, falling to the floor and landing on her side. Am. Compl. at ¶ 6. Roger Elmore ("Elmore") was a store manager on duty at the time of the alleged incident. Elmore Dep. at 7:3–5 [ECF No. 47-3].

On January 26, 2016, Daniels and Plaintiff Lamar Daniels filed a complaint in the South Carolina Court of Common Pleas for Orangeburg County, alleging negligence and gross negligence by Defendant. Compl. at ¶¶ 9–13 [ECF No. 1-1]. Lamar Daniels brings a loss of consortium claim. Am.

Compl. at ¶¶ 12–14, 18–19. On February 16, 2016, Plaintiffs filed an amended complaint as a matter of course.[1] On March 23, 2016, Defendant timely removed the case to federal court under diversity jurisdiction and contemporaneously filed an answer to the amended complaint. [ECF Nos. 1 & 3].

On April 20, 2016, Plaintiffs filed a motion to amend the amended complaint, ECF No. 8, and a motion to remand, ECF No. 9, which the Honorable J. Michelle Childs denied on October 24, 2016. [ECF No. 26]. Both motions were premised on the addition of Elmore as a defendant. The order denying Plaintiffs' motion to amend held that: (1) the proposed amendment to add Elmore—a nondiverse defendant with South Carolina citizenship—was primarily to destroy diversity jurisdiction because Plaintiffs sought the amendment almost immediately after removal but before any additional discovery had occurred; (2) Plaintiffs were dilatory in seeking the amendment because the suit had been pending for several months and the complaint had been previously amended for the specific purpose of clarifying the allegedly liable party; (3) the amendment was futile and unnecessary because Food Lion would still be vicariously liable for any negligence of its employees; and (4) the equities of the situation did not warrant granting leave to amend because Plaintiffs failed to explain why Elmore was a necessary party and, if so, why he was not previously named as a defendant. Oct. 24, 2016 Order at 2–4. Because the Court denied the motion to amend, the Court likewise denied the motion to remand. *Id.* at 3–4.

On February 15, 2017, Judge Childs issued a second consent amended scheduling order with a May 1, 2017 deadline to join other parties and amend the pleadings. [ECF No. 32]. That deadline was not altered by subsequent scheduling orders. [*See* ECF Nos. 36, 41 & 42]. On April 20, 2017, the

---

[1] The amended complaint eliminates a previously named defendant, Delhazie America, LLC, but contains the same substantive allegations against Food Lion.

case was reassigned from Judge Childs to this Court. [ECF No. 33].

On April 20, 2018, Plaintiffs filed the pending second motion to amend the amended complaint. On May 4, 2018, Defendant filed a response in opposition. [ECF No. 44]. Plaintiffs did not file a reply. On June 7, 2018, Defendant filed the instant motion for summary judgment. On June 21, 2018, Plaintiffs filed a response in opposition, and on June 28, 2018, Defendant filed a reply thereto. [ECF Nos. 47 & 48]. The motions are now ripe for the Court's consideration.

## Plaintiffs' Motion to Amend

### I. Legal Standard

Rule 15(a) of the Federal Rules of Civil Procedure governs amendments before trial, providing in pertinent part that "[a] party may amend its pleading once as a matter of course within: (A) 21 days of serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading[.]" Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The Fourth Circuit Court of Appeals has "interpreted Rule 15(a) to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citation omitted).

Furthermore, "after deadlines provided for by a scheduling order have passed, the good cause standard [of Rule 16] must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (citations omitted). Rule 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

3

"[G]ood cause means that scheduling deadlines cannot be met despite a party's diligent efforts." *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997) (citation omitted).

Additionally, "[w]hen a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with 28 U.S.C. § 1447(e)." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). Section 1447(e) "provides the district court with two options: '[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.'" *Id.* at 461–62 (quoting 28 U.S.C. § 1447(e)). "These are the only two options for a district court faced with a post-removal attempt to join a nondiverse defendant; the statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case." *Id.* at 462. "[T]he actual decision on whether or not to permit joinder of a defendant under these circumstances is committed to the sound discretion of the district court[,] [and] this decision is not controlled by a Rule 19 analysis." *Id.* This discretion allows the Court to examine "all relevant factors, including: the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if the amendment is not allowed, and any other factors bearing on the equities." *Id.* (citation omitted).

## II. Discussion

Plaintiffs' second motion to amend the amended complaint seeks to add Elmore as a defendant. *See* Pls.' Second Mot. to Amend Am. Compl. at 1. However, the scheduling order deadline for motions to join parties and amend the pleadings expired on May 1, 2017. [*See* ECF No. 32 at 1]. Therefore, in order for the Court to grant Plaintiffs' motion to amend, they must establish good cause. *See Parvizian*, 535 F.3d at 298.

4

Plaintiffs attempt to distinguish their pending motion from their April 20, 2016 motion to amend that Judge Childs denied, noting that discovery has now concluded and Plaintiffs have taken Elmore's deposition (on April 12, 2018). Pls.' Mem. in Supp. of Second Mot. to Amend Am. Compl. at 2. According to Plaintiffs, discovery "confirmed that Mr. Elmore was an assistant manager at the time of the incident and indeed [is] a potential witness or even party to the case." *Id.* "Based on Mr. Elmore's testimony on April 12, 2018, Plaintiffs again request this court to allow them to amend the complaint." *Id.* at 3. In support of this request, Plaintiffs argue that: (1) "[u]nder South Carolina law, Plaintiffs have a right to recovery against a store manager for negligence related to that manager's control and care of the store, including maintenance of the premises[,]" and "Elmore is a necessary party because to exclude him would deny Plaintiffs the ability to recover for the damages his specific conduct and omissions proximately caused"; (2) "Defendant is in no way prejudiced in defending on the merits if Mr. Elmore is included"; (3) "any prejudice to Defendant Food Lion . . . is greatly outweighed by prejudice to Plaintiffs" because Food Lion and Elmore "have known of Elmore's potential involvement since the case was originally removed and remand was sought." *Id.* at 3–5.

In response, Defendant contends that the *Mayes* factors weigh in favor of denying Plaintiffs' second motion to amend, noting that nothing substantive has changed since Judge Childs performed this analysis. Mem. in Opp'n to Pls.' Second Mot. to Amend Compl. at 4 [ECF No. 44]. Specifically, Defendant argues that: (1) Plaintiffs' attempt to add Elmore as a defendant is mainly to defeat diversity jurisdiction; (2) Plaintiffs have been dilatory in seeking this amendment because "[d]espite [their] arguments about recent discovery . . . , they have known Elmore's identity since at least the date of their original motion to amend, which was two years ago"; (3) the scheduling order's deadline for motions to amend the pleadings expired on May 1, 2017, and the Court has amended the scheduling order three

5

more times since, yet Plaintiffs did not ask for an extension for motions to amend the pleadings; (4) an order denying the motion will not result in harm or prejudice to Plaintiffs because regardless of Elmore's absence as a party, Food Lion will be vicariously liable for any negligence of its employees; and (5) the equities of the situation support Defendant's position. *Id.* at 4–8.

Plaintiffs' arguments are similar to those they have already made before Judge Childs in support of their April 20, 2016 motion to amend. *See generally* ECF No. 8-1. The fact that Elmore's deposition was taken between the first motion to amend and the one at hand does not meaningfully alter the analysis or change this Court's conclusion that the *Mayes* factors weigh in favor of denying Plaintiffs' pending motion.[2] Judge Childs has already performed that task, and the Court adopts her analysis. *See* Oct. 24, 2016 Order at 2–4. Moreover, in light of the expired deadline for motions to amend the pleadings, Plaintiffs fail to establish good cause justifying leave to amend the amended complaint. Therefore, the Court denies Plaintiffs' second motion to amend the amended complaint. Next, the Court turns to Defendant's motion for summary judgment.

## **Defendant's Motion for Summary Judgment**

### I.  **Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[2]  Plaintiffs knew Elmore was the assistant manager since at least the filing of their April 20, 2016 motion to amend, *see* Proposed Am. Compl. at ¶ 6 [ECF No. 8-1] ("Elmore was an agent, employee and servant of Defendant Food Lion and acting within the course and scope of his employment as an assistant manager[.]"). Moreover, on May 5, 2017, in response to Plaintiffs' first set of interrogatories, Defendant answered that Elmore was the assistant store manager on the date of the incident. *See* ECF No. 43-3 at 2.

6

a matter of law."). The moving party has the burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant makes this showing, the opposing party must "go beyond the pleadings" to evince "specific facts showing . . . a genuine issue for trial." *Id.* at 324. A genuine issue of material fact—one "that might affect the outcome of the suit"—exists if, in viewing the record and all reasonable inferences drawn in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex*, 477 U.S. at 322. "[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249 (citation omitted). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48.

The Court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52. The Court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Campbell v. Hewitt, Coleman & Assocs, Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (citation omitted). In ruling on a motion for summary judgment, the Court must not resolve disputed facts, weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995) (citation omitted), or make determinations of credibility. *Sosebee v. Murphy*, 797

F.2d 179, 182 (4th Cir. 1986). Inferences "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## II. Discussion

### A. Parties' Arguments

Defendant moves for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure "on the grounds that there is no genuine issue as to any material fact and . . . Defendant is entitled to a judgment as a matter of law." Def.'s Mot. for Summ. J. at 1. Specifically, Defendant claims that "Plaintiffs have presented nothing more than allegations of negligence" and fail to present evidence supporting those allegations; for example, there is no evidence that: (1) a substance was actually on the floor; (2) even if a substance was there, how it came to exist or how long it existed before the alleged injury. Def.'s Mem. in Supp. of Mot. for Summ. J. at 4 [ECF No. 46-1]. "Without such evidence," Defendant argues, "a foreign substance premises liability claim simply cannot prevail." *Id.* Moreover, Defendant contends that Plaintiffs' case is premised on the doctrine of *res ipsa loquitur* because they "rely[] solely on evidence that an accident occurred in Defendant's store" and ask the Court "to infer that some negligent act or omission by Defendant caused th[e] accident." *Id.* Thus, Defendant asserts summary judgment is warranted because Plaintiffs fail to offer evidence of negligence that rise above mere speculation. *Id.*

In response to Defendant's contention that their evidence is lacking, Plaintiffs argue that: (1) "Defendant ignores the possibility that the buggy caused Ms. Daniels'[s] fall"; (2) there is "a question of fact for the jury to answer what caused Ms. Daniels to fall"; (3) "the evidence shows that Defendant did nothing to review the condition of the floor where the incident occurred until Ms. Daniels fell,"

8

creating a question of fact "whether Defendant knew or should have known about the floor's condition[.]" Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 2–3 [ECF No. 47].

### B. Premises Liability in South Carolina

In South Carolina, "[p]remises liability is a theory of negligence that establishes the duty owed to someone injured on a landowner's property as a result of conditions or activities on the land." *Callum v. CVS Health Corp.*, 137 F. Supp. 817, 858 (D.S.C. 2015) (citation omitted). In order to establish a negligence cause of action under South Carolina law, a plaintiff must present evidence of: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages sustained by the plaintiff. *Andrade v. Johnson*, 588 S.E.2d 588, 592 (S.C. 2003) (citation omitted).

"The existence of a duty owed is a question of law" for the Court to determine. *Houck v. State Farm Fire & Cas. Ins. Co.*, 620 S.E.2d 326, 329 (S.C. 2005) (citations omitted). "[I]f no duty exists, the defendant is entitled to judgment as a matter of law." *Id.* "If a duty does exist, the jury then determines whether a breach of the duty that resulted in damages occurred." *Nelson v. Piggly Wiggly Cent., Inc.*, 701 S.E.2d 776, 781 (S.C. Ct. App. 2010) (citation omitted). "Generally, there is no common law duty to act." *Jensen v. Anderson Cnty. Dep't of Soc. Servs.*, 403 S.E.2d 615, 617 (S.C. 1991). However, an affirmative duty "may be created by statute, contract relationship, status, property interest, or some other special circumstance." *Id.* "South Carolina recognizes four general classifications of persons who come on premises:" (1) adult trespassers; (2) invitees; (3) licensees; and (4) children. *Sims v. Giles*, 541 S.E.2d 857, 861 (S.C. Ct. App. 2001). "Different standards of care apply depending on whether the visitor is considered an 'invitee,' i.e., an invited (express or implied) business guest; a 'licensee,' i.e., a person not invited, but whose presence is suffered; a 'trespasser,' i.e.,

9

a person whose presence is neither invited nor suffered; or a child." *Id.* (citation omitted). "In premises liability cases, the invitee is offered the utmost duty of care by the landowner and a trespasser is generally offered the least." *Id.*

In the case at hand, the parties do not dispute Daniels's status as an invitee while she shopped at Defendant's grocery store. Am. Compl. at ¶ 5; Answer at ¶ 5. "Invitees include patrons of stores . . . ." *Sims*, 541 S.E.2d at 862. "'An invitee is a person who enters onto the property of another by express or implied invitation, his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land, and there is a mutuality of benefit or a benefit to the owner.'" *Callum*, 137 F. Supp. at 858–59 (quoting *Lane v. Gilbert Const. Co.*, 681 S.E.2d 879, 882 (S.C. 2009)). "'[A]n invitee enters the premises with the implied assurance of preparation and reasonable care for his protection and safety while he is there.'" *Id.* at 859 (alteration in original) (quoting *Singleton v. Sherer*, 659 S.E.2d 196, 205 (S.C. Ct. App. 2008)).

"A merchant is not an insurer of the safety of [its] customers[,]" and "is not required to maintain the premises in such condition that no accident could happen to a patron using them[,]" *Garvin v. Bi-Lo, Inc.*, 541 S.E.2d 831, 832, 833 n.1 (S.C. 2001) (citations omitted); however, a merchant owes "an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, and is liable for injuries resulting from the breach of such duty." *Sims*, 541 S.E.2d at 863 (citation omitted). The owner "has a duty to warn an invitee only of latent or hidden dangers of which the landowner has knowledge or should have knowledge." *Id.* (citing *Callander v. Charleston Doughnut Corp.*, 406 S.E.2d 361, 361 (S.C. 1991)). However, "[t]he property owner generally does not have a duty to warn of open and obvious conditions, but a landowner may be liable if the landowner should have anticipated the resulting harm." *Harris v. Univ. of S.C.*, 706 S.E.2d 45, 48 (S.C. Ct. App. 2011) (citation omitted).

"To recover damages for injuries caused by a dangerous or defective condition on a storekeeper's premises, the plaintiff must show either (1) that the injury was caused by a specific act of the [defendant] which created the dangerous condition; or (2) that the [defendant] had actual or constructive knowledge of the dangerous condition and failed to remedy it." *Garvin*, 541 S.E.2d at 832. Plaintiffs must prove either one of these in order to prevail at trial, and the dispositive issue at hand is whether there is any evidence that Defendant created the alleged substance on the floor or knew about it and failed to remedy it. Either theory is predicated on the existence of a dangerous condition; if there is no evidence of a dangerous condition, then the Court must grant summary judgment.

### C. Evidence of a Dangerous Condition

In the amended complaint, Daniels alleges "a substance on the floor caused her footing to become unstable, leading her to fall," but her allegations that "Defendant knew or should have known that the floor conditions . . . were hazardous" lack further factual enhancement. Am. Compl. at ¶¶ 6, 9. In supporting summary judgment, Defendant claims there is no evidence of a substance on the floor and, even assuming there was a substance, no evidence of how it got there or how long it was there before the incident. Def.'s Mem. in Supp. of Mot. for Summ. J. at 4. As evidence of a hazardous condition on the floor, Plaintiffs cite excerpts from Daniels's and Elmore's depositions.[3] *See* ECF No. 47-1. Beyond these depositions, Plaintiffs rely only on their allegations, including a newly raised allegation that the shopping cart caused Daniels's fall, not a substance on the floor. *Compare* Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. at 2 ("Defendant ignores the possibility that the buggy

---

[3] There appears to be a video of the incident; however, neither party has proffered this evidence in supporting or opposing summary judgment, and the video has yet to come before the Court. *See* Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. at 2 ("[T]he video does not show that Ms. Daniels tripped over her own feet, nor does it confirm there was a substance on the floor."); Daniels Dep. at 34:17–18 ("Q: Have you reviewed the video of this incident? A: No.") [ECF No. 46-2].

caused Ms. Daniels's fall.") *with* Am. Compl. at ¶ 6 ("[A] substance on the floor caused her footing to become unstable, leading her to fall, the buggy to give way, and [Daniels] ultimately hitting the floor on her side."). Plaintiffs raise this allegation for the first time before the Court in their memorandum in opposition to summary judgment, which is not permissible to defeat summary judgment. *See Slezak v. Glover*, C/A No. 4:06-1122-RBH, 2008 WL 4308144, at *12 n.6 (D.S.C. Sept. 15, 2008) (citing *White v. Boyle*, 538 F.2d 1077 (4th Cir. 1976)) (declining to address new, conclusory allegations raised for the first time in a memorandum opposing summary judgment). Recognizing the evidentiary proof required in these cases, to some extent Plaintiff attempts to morph a foreign substance case into a defective buggy case, but the amended complaint does not allege a defective buggy, nor is there evidence of such. Regardless, it is notable that Plaintiffs' second motion to amend the amended complaint does not seek to add this new theory to the case.

Defendant maintains Plaintiffs have no evidence that a substance on the floor caused Daniels to slip and, thus, no evidence of a dangerous condition. Although the operative complaint alleges a substance on the floor causing Daniels's slip and fall, in her deposition, she does not affirmatively testify that there was a substance on the floor. *See* Daniels Dep. at 35:24–36:2 ("Q: . . . [I]s it your testimony that there was something on the floor that caused [the fall] to occur? A: . . . I have no way of knowing that."), 36:3-4 ("Q: Did you ever inspect the floor? A: No."), 36:17–19 ("Q: You don't know that there was anything on the floor . . . ? A: Right."), 36:20–24 ("Q: . . . [I]f you don't know if anything was on the floor, you don't know how long anything would have been there on the floor . . . ? A: No."). By Daniels's own testimony, there is no evidence of a substance of the floor; she merely speculates that a substance caused her fall. *See* Daniels Dep. at 51:21–52:4 ("Q: [Y]ou're not sure what, if anything, may have been on the floor at Food Lion, are you? A: Well, I mean, because

12

something caused me to fall. . . . I was laying there and I wasn't in any position to look at the floor and . . . I never thought to look at the floor."). Because Daniels is unable to identify whether there was a substance on the floor and proffers no theory as to what it could have been, there is simply no evidence that a hazardous condition existed. Although Plaintiffs insist there is "a question of fact for the jury to answer what caused Ms. Daniels to fall," such speculation cannot survive summary judgment. *See Pennington v. Zayre Corp.*, 165 S.E.2d 695, 696 (S.C. 1969) ("There is no evidence in the record that the [plastic] bags were on the floor at any time prior [to plaintiff's fall]. To hold that the bags had been there sufficiently long that they should have been discovered by the merchant would be pure speculation.").

Plaintiffs' additional citations to excerpts of Elmore's deposition also fail to show the existence of a substance on the floor. *See* Elmore Dep. at 8:9–14 ("Q: [F]rom 7:00 to 5:00, how many times did you inspect the floors? A: . . . three or four times. Q: Do you have a log of those three or four times you inspected the floors? A: No."), 9:7–9 ("Q: [W]hen was the first time you inspected [the floor]? A: I inspected the floor, that area, when they called me with the incident."), 21:15–18 ("Q: [S]ince the incident you began to have a [maintenance] checklist, but at the time you didn't have the checklist? A: Yeah."), 23:22 ("A: [T]he floor[] was . . . pretty much dry."), 24:15–21 ("Q: [Daniels has] got a significant amount of clothing on; is that right? A: Yeah. Q: Enough to dry a floor that was wet if she's laying on top of the spot she fell? [Objection to the form] A: Yeah."), 65:23–66:5 ("Q: [I]f you dry mop that store twice a day, there's a much less chance somebody's going to slip on some substance? A: Yes."). None of this testimony actually shows the existence of a substance. Even assuming it does, there is no evidence as to what it could have been. Whether it was a created danger or merely a foreign substance is critical to determining Defendant's liability, and Plaintiffs proffer no theory or allegation

13

of what the alleged substance could have been. *See Wintersteen v. Food Lion, Inc.*, 542 S.E.2d 728, 731 (S.C. 2001) (citing and quoting *Baker v. Toys-R-Us, Inc.*, No. 96-2815, 1998 WL 7939, at *4 (4th Cir. Jan. 13, 1998) (per curiam)) (discussing South Carolina's "distinction between a 'created danger' and a 'foreign substance' case": "Retail stores exist for the singular purpose of selling goods to customers, and therefore the goods must be subject to removal by store patrons. Sometimes, however, this results in a dangerous condition created when a store's customers drop products on the floor. Because this danger is a necessary consequence of the retail business, the South Carolina courts appear to rule that *such hazards are reasonable as a matter of law so long as they are remedied when discovered*. Thus, where the defect results from the unauthorized act of another, the storekeeper is held only to reasonable care in the discovery and remedy or removal of it."). Moreover, assuming a dangerous condition was on the floor, there is no evidence that it was there through an act of Defendant, or that Defendant was aware of the condition, or how long the condition existed before the incident. Such evidence is necessary for Plaintiffs to prevail at trial. *See Thomas v. Consol. Stores/Big Lots*, 955 F.2d 1064, 1993 WL 211648, at *2 (4th Cir. 1993) (per curiam) ("In South Carolina slip and fall cases, the mere presence of a spilled substance is insufficient to show that a storekeeper should have known about the condition."); *Gillespie v. Wal-Mart Stores, Inc.*, 394 S.E.2d 24, 25 (S.C. 1990) ("The mere fact that water was on the floor of the store and was within the field of vision of a nearby store employee at the time [plaintiff] slipped upon it is not itself enough evidence to charge [defendant] with negligence."). Accordingly, there is insufficient evidence for this case to proceed to trial. *See Bessinger v. Bi-Lo, Inc.*, 496 S.E.2d 33, 35 (S.C. Ct. App. 1998) (affirming summary judgment in slip-and-fall case because although it was undisputed that smashed grapes caused plaintiff's fall, record was devoid of evidence of defendant's actual or constructive knowledge that the grapes were on the floor, whether grapes were

on floor through defendant's act, or how long the grapes were on the floor); *Nolan v. Seawatch Plantation Master Ass'n, Inc.*, Civil Action No. 4:10-cv-00501-RBH, 2011 WL 5878137, at *4 (D.S.C. Nov. 23, 2011) (granting summary judgment because although the plaintiff slipped and fell on a puddle of water, there was "no evidence in the record to establish that Defendant created the hazardous condition, or had actual or constructive notice of the water"). Therefore, the Court grants Defendant's motion for summary judgment.

## Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' second motion to amend the amended complaint [ECF No. 43]. Additionally, the Court **GRANTS** Defendant's motion for summary judgment [ECF No. 46].

**IT IS SO ORDERED.**

Florence, South Carolina
November 2, 2018

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge